Arkansas Teachers Retirement System, et al, versus Goldman Sachs Group, Incorporated, et al. Thank you, gentlemen. Good morning. Just a second, Mr. Giffra. Mr. Giffra. Good morning, Your Honor. Robert Giffra, Sullivan and Cromwell for the Goldman Sachs Appellants. This is a 23-F appeal challenging the certification of a class where Goldman Sachs is alleged to have made false statements with respect to its general aspirational business principles and conflicts controls. We believe the Court should reverse class certification here because the challenged general aspirational statements did not have a price impact as a matter of fact and as a matter of law. The fundamental principle of Basic v. Levinson is that the price of the company's stock reflects the alleged misstatement, and the Supreme Court in Halliburton, too, made quite clear that defendants must have the right to challenge price impact. In the Court below, Your Honor, Goldman Sachs put forward evidence that on the 18 days when the firm made these general aspirational statements were dedicated to complying with law, our clients' interests come first. On those 18 days, there was no evidence of any price impact whatsoever. In addition, Goldman Sachs put forward evidence that on 34 occasions when there were disclosures in the front page of the New York Times and other places, there was no price movement on those 34 days, notwithstanding the fact that there was public disclosure that Goldman Sachs had conflicts of interest. And this is... As a part of the public disclosure of those 34 different opportunities, is it fair to say that Goldman Sachs actually defended itself, basically either denied the representations that were made in those disclosures or explained them in a way to put those particular disclosures in context? Goldman Sachs, on 10 of the 34 days, put out a denial with respect to these disclosures. In addition, on the day when the abacus complaint came out and the stock price dropped, Goldman Sachs also made a denial. But... Actually, during all of those initial disclosures, isn't it fair to say that Goldman Sachs issued press releases as a part of their denials? And, well, I guess that's the first question. There's no question that Goldman Sachs, on 10 of the 34 days, issued denials. But the question I think that is before the Court is whether the statements, when they were originally made, did they have a price impact at all, and they did not. And that's consistent with this Court's seven decisions, making quite clear that such puffery statements can have no price impact, because as this Court held in the J.P. Morgan case and in the UBS case, a reasonable investor would never view this kind of a statement as something that was a guarantee of a particular fact or outcome. It's a general puffery statement. And the problem is what the plaintiff would like to do is latch on to these puffery statements and come up with a securities verdict. It's fair to say that there was no price increase when those various disclosures were made. Of course, Judge Crotty said, essentially, this is all price maintenance, that the price was inflated, the price of Goldman Sachs stock was inflated. Essentially, these disclosures maintained the price. And why is that necessarily improper? The reason why it was improper is the price maintenance theory, particularly as set forth in this case, is completely speculative. In the case where the Second Circuit has even indicated and price maintenance is a very narrowly defined doctrine, the case Vivendi, which was a case we wrote a letter about, in that case, on 15 of the 57 days when Vivendi made statements about its liquidity and its cash position, not puffery statements, but statements going to financial things that really matter to investors, there was a price increase. And so the claim that was being made in Vivendi was, well, there wasn't a price increase on all 57 days. That's a different case here. And, in fact, the Vivendi court squarely distinguished between the kind of puffery statements we're talking here, in fact, citing the J.P. Morgan case, and statements of concrete fact that can be the kind of statement that can have a price impact. So... I'm just asking another question. And, again, just try to educate me on this particular point. Essentially, he found price maintenance, but at least as I was studying this, I mean, the prices remained consistent. Both experts, or all experts, three experts on both sides, acknowledged that, but isn't really the issue less whether there was some sort of price maintenance or increase when the initial disclosures were made, but that there was price movement at the time of the 16th of April, April 16th, April 30th, and then June. Isn't that really the issue? There was a price movement at that point. And so then the question becomes, what caused the movement? Whether, in fact, was the fact that there was an investigation which was going to be conducted by the department or by SEC, or whether it could have been damage to the reputation and or both. Isn't that really what the central core issue is here? Well, in Halliburton, too, the Supreme Court talks about the fact that there'd be a price impact when the statement is made or when there's a decline. And in this case, there was no price impact at all from these puffery statements. And in the Best Buy case, the Eighth Circuit held that the lack of a front-end price impact was sufficient to rebut the basic presumption. So the issue that the... That's interesting. When you refer to it, you rely upon the Eighth Circuit decision, Best Buy. And the fact that you look at that particular opinion, what you see in the Eighth Circuit is they really focused upon the significant price impact when the disclosure was ultimately made. And they suggest that there was a very large impact. And so as a result, they really go to the heart of price impact at the time of the ultimate disclosure, the corrective disclosure, as opposed to the initial. Isn't that right? Well, no. I think the Best Buy court focuses on the fact that there was no price impact after the press release, which was a protected statement. And then there were confirmations on the same day and there was no increase in the price. And that was deemed to be dispositive by the court. But in our view, Your Honor, the problem that the plaintiff ultimately has, again, as a matter of fact, we put in 18 days, undisputed, no increase. 34 days, Judge Crotty deemed that to be merits evidence, which he was not going to consider. But the issue in this case that we see is that the statements that Goldman Sachs made, we're dedicated to complying with the law. Integrity and honesty is at the heart of our business. Our clients' interests come first. Those are indistinguishable from the very statements that this court has repeatedly held can have no price impact because those statements are not statements that a reasonable investor would rely upon. And then the response to that is, to what extent do you actually look at  but put them in context? And so that if, in fact, the statements that are made at the same time that there are, that there is conduct, which becomes the ultimate basis of this particular lawsuit, which is directly contrary to the representations that are made, which you call puffery, to some extent, when you put those in context, doesn't it sort of suggest that it should be treated differently than the earlier cases about puffery in general, that is, you know, using language which means nothing out of context? No, Judge Sessions. In fact, in the other cases, the UBS case which Judge Cabranes authored, in that case the claim was that UBS had risk management systems that prevented having excessive assets that would be risky assets. The allegation in the complaint was that Goldman Sachs had $100 billion of toxic assets and its most senior management knew about it at the same time it was making the statements. In addition, the claim in that case was that UBS and its most senior management knew about it, were involved in a massive tax fraud against the U.S. government. Notwithstanding those allegations, this Court held that those statements were immaterial puffery, that no investor could rely upon them. In the J.P. Morgan case, which is the first case that sort of sets off all these cases involving Barclays, etc., there the allegation was that senior management at J.P. Morgan knew that there was a fraud at Enron and a fraud at WorldCom. In addition, this Court held that those statements are not statements that can have price impact because no investor would rely upon them. Well, it seems to me— I don't want to cut off Judge Sessions' questions, but it seems to me that we've got the materiality cart ahead of the horse. This is a 23B class certification issue, and you certainly have the right to raise the question as to whether there was fraud on the market. And that's an appropriate analysis. But materiality is generally left with regard to particulars of proof in a 56B or a 12B6 motion. You lost the 12B6 motion, as I recall. So let's set materiality aside. What was the error in your view with regard to the analysis of the proffer proof that you made with regard to the lack of effect of the alleged misrepresentations by your clients that were general in nature— conceited, I get that— as by the district court judge? What was it that Judge Crotty did wrong? The first thing that Judge Crotty did wrong was he gave no weight, called insignificant, the fact that on 18 days when Goldman Sachs made these challenge statements, there was no price increase. So let's stop there. And he referred to it as more as if it were truth on the market. And correct me— and I see your red lights on. I'm going to allow you some additional time, and Victor's going to keep track of the additional time to Mr. Goldstein, so you'll have an appropriate amount of time. This case deserves a little bit of extra attention. Truth on the market, as I understand it, is where there's proof that the information's out there and you know about it and you go ahead and buy the stock anyhow, right? Yes, and this is the opposite here because we put forward the evidence with respect to the 34 days that when the market knew of Goldman Sachs client conflicts, there was no movement in the stock price, notwithstanding if it was on the front page of the New York Times. And then the next— so I think there's a plausible argument on your side that this is not a truth on the market argument that you were making. What you were trying to do was rebut the presumption, that being the term the Supreme Court's used in Basic and Levison, as to fraud on the market type claims, correct? Yes. All right. And then the court said, and I'll read it to you, the court determines the defendants have failed to demonstrate a complete lack of price impact. Defendants cannot show the total decline in stock price on the corrective disclosure dates as attributable simply to market reaction to the announcement of enforcement actions and not the revelation in the market that Goldman had made material misstatements about his conflict of interest policies and practices. You say that's error. Yes, because— In his decision, he referenced preponderance of the evidence. We don't even think that preponderance of the evidence is the correct standard. The standard should be the evidence in Rule 301, which applies in any civil case. So let's stop there just for a second. There's a substantial number of evidence professors who disagree with you about that one Professor Capra who happens to be the reporting judge with regard to the Advisory Committee on Evidence, which reports to the Standing Committee on Rules and Procedures. But presumably you're wrong about that, that the burden— that this is not a classic 301 burden, but that you're right about preponderance. Would you still persevere then? Yes. We win regardless of the standard. And if I could just address one other point Your Honor made. What we're saying with respect to the immateriality of the statement, the lack of price impact, in the Amgen case, the Supreme Court has held that the plaintiff did not have to prove price impact. He was affirming a decision of the Ninth Circuit where the Ninth Circuit made the point, and Judge Sessions was on the panel, that, and this is 660 F. 3rd at 1170, that the plaintiff had to at least plausibly plead a material statement. That same point was made in a case called Aranaz, which is from the Southern District of Florida, cited by Judge Crotty, cited by the plaintiffs, said it so long as adequately pled. So our position is that the statements themselves are not statements that can survive the seven decisions of this Court. And in fact, in the Regents v. Price... You really want to take me back to materiality, don't you? No, I'm not. What I'm saying, Your Honor, is that you can address the fact that these statements, as a matter of law, are not material and do not have a price impact on this motion. And there's nothing limiting the Court from doing so. And in fact, the Fifth Circuit, in the Enron case, did so. And Judge Livingston in Leavitt v. J.P. Morgan, which is a case we cite, 2013, dealt with the merits, reached the merits, and there's certainly nothing in Halliburton that makes it clear you can reach the merits, dealt with the notion that, in that case, it had to do with the application of the Ute presumption, and the claim was, well, did the defendant even have a duty to disclose? And the Court said no, and therefore reversed the class certification decision. Well, presume that we decide not to resolve the materiality aspect of your argument, but we address what we were to find here with regard to Judge Crotty's determination as to what the burden was that you had to meet and your failure to meet it. What would be the remedy in that instance? The remedy in that instance would be the Court would reverse and remand. For a hearing? Well, the other side has not presented any evidence of price impact at all. They put no, other than the speculation that at the time of the stock drop, on the 16th of April, they claim, well, the stock price was inflated without any evidence that the stock price was in fact inflated. In addition, when you look at the other dates, so for example, on the 30th of April, the only disclosure that day was there was a DOJ investigation. Nothing new came out about conflicts. The same thing on the 26th of April. There was disclosure, this was originally a disclosure date they had. There was a, there was a, there was information that came out from the Senate disclosing information about conflicts by Goldman Sachs. No price increase. No price drop, excuse me. All right. You've got your rebuttal time. Thank you, Your Honor. Well, yeah, sure. I appreciate, by the way, that you rely upon a case that I was on in the Ninth Circuit. That's, I appreciate that. But the standard seems to be really at issue here. And you use, you use some representations or you make representations that Judge Crotty was using this conclusive effect or essentially using a standard which is other than by preponderance of the evidence. In fact, there was a footnote in which he clearly indicated that it was a preponderance of evidence standard. Well, but this Court has repeatedly said that you look to what standard was actually applied and the standard on pages 12 and 13 of his decision was conclusively and conclusive evidence. I mean, I guess we could debate that. I mean, he's talking, he's using some language there which perhaps is a little bit overly broad. But in fact, assuming that, assuming that when he refers to the footnote, he's using that by preponderance of the evidence standard, you want to replace this by preponderance of the evidence with essentially a Rule 301. And my question to you is, you've got some Supreme Court decisions which clearly indicate that the burden should be placed upon the defendant to show no price impact, right? Halliburton too, in particular, Amgen as well. They seem to suggest that there should be a burden placed upon the defendant to actually prove that there is no price impact. If in fact you use a straight 301 approach in which all you have to do is come forward with some evidence to shift the burden back to the plaintiff, doesn't that essentially result in a system by which the plaintiff would have the burden of proof in regard to price impact? Under 301, which applies in any civil case unless there's a statute that provides otherwise, there is one here. The other side cites cases that are administrative decisions. 301 doesn't apply. So under the literal reading of 301, it should apply here and we have a burden of production. The problem here is that we put forward evidence, the other side put forward pure speculation, and Judge Crotty applied a standard that essentially rendered Halliburton too dead letter because there's no way we could possibly, just looking at a stock drop in a vacuum, which is what the other side does, and then goes back and says, oh, you made these statements that never had a front-end price impact and therefore we've shown that the market price of the stock reflected the misstatements when there were 34 occasions, when there was repeat. I appreciate that, but if you're just applying 301 now, if you apply 301, essentially what that means is all you have to do as a defendant is come forward with a little bit of evidence and then all of a sudden the burden shifts to the plaintiff. Obviously, the professors, the law professors connected with the Advisory Committee on Evidence would disagree with you. I'm also connected to that particular advisory committee, so that doesn't mean I necessarily agree with them, but anyway, my question is, isn't that inconsistent? That approach, broadly, inconsistent with what the Supreme Court has said about where the burdens should lie in regard to this rebuttal, this price impact. When the issue was addressed by the Eighth Circuit, the Eighth Circuit applied 301, and that's the only circuit that has addressed this issue thus far. And I looked at that carefully, and they mentioned 301, and then they go into an in-depth analysis of the fact that there was significant evidence about no price impact, essentially. And so, essentially, even though they mentioned 301, they actually addressed this as if the burden was still placed upon the defendant and the evidence essentially supported the defendant's position. Well, in this case, though, we're the only party that has presented any evidence on the price impact side. The other side simply has speculated. That is all they have. And you can't have a price maintenance theory, which is the linchpin of their case, based on speculation, see this Court's decision in Vivendi where there were 15 of the 57 dates there was a positive price impact. So what the other side would like the Court to do is take statements that the Court has repeatedly said are not statements a reasonable investor would rely upon that have no evidence, there's no evidence, as a matter of fact, in this record showing a positive price increase, and say, we want you to assume by speculation, our speculation, our bare allegation that the price was inflated by statements that this Court, on seven separate occasions, has said are not statements that can have price impact. And it doesn't make sense that a multibillion-dollar securities case should go forward against Goldman Sachs when the same case didn't go forward against J.P. Morgan or UBS. The other thing, and your reaction to Judge Cote's decision was, Judge Cote actually said that the disclosure that was done in regard to Abacus on the 16th of April was different in quality, in seriousness, as opposed to the earlier disclosures which did not have a price impact. You disagree with that? Yes. In fact, all the, basically all the relevant allegations that are reflected in the SEC complaint, and this is at pages J.A. 5110, 5111, were in literally the New York Times talking about how John Paulson had been done to deal with Goldman Sachs that allowed Goldman Sachs to offload subprime securities and bet against its clients. So these very allegations were, another day, December 24th, the day before Christmas, front page, New York Times, allegations about Goldman Sachs with John Paulson betting against its clients in connection with the Hudson CDO, no price movement whatsoever. And Judge Cote said that evidence should not be considered here because it was, it went to truth on the market. And we think that was error. Thank you very much. Mr. Goldstein. Thank you, Your Honors. Tom Goldstein for the appellees. The case has a bunch of moving parts. There's the question of materiality, both with respect to whether Amgen puts that issue before the Court under Rule 23-F and the substance of it. And then there is the question of the rebuttal of the determination of price impact. The Court, I think, is more focused on the latter question, and so I might start there. And so we have a few different issues to handle. The first is, what's the right legal rule? You know, what is it that Judge Cote said was the standard for rebutting the basic presumption? And then figure, after having identified what the right legal rule is, what did the evidence show? So there's a debate among the parties about whether Judge Cote meant it when he said that there was a preponderance standard. We think that they have taken this word conclusive out of context. What we've done is provide you the full statements from Judge Cote's ruling, and what he says is this. You've got to prove, if you're going to rebut the basic presumption, you do it by a preponderance of the evidence. Halliburton II says that you can do that. But what you are going to do if you're trying to negate the existence of price impact, and you're going to point to some other cause, essentially a loss causation theory, is you're going to have to negate the whole price impact. You can't come in and say, okay, three quarters of the stock decline owes to the fact that there was a governmental investigation, because that still leaves a quarter of the price impact. And that's when he uses the word conclusively. He quite clearly is saying you've got to disprove the whole thing. Can I just ask you, where that standard of proof by preponderance of the evidence, which is inconsistent with Rule 301, there's no question about that, where is that established? Sure. Well, let me bracket one thing just so the Court is aware. This question is presented in two cases before the Second Circuit right now. There's a panel that heard the case Barclays, also a 23-F appeal. I just want the Court to be aware that another panel heard oral argument on this same question, on essentially the same briefing, about four or five months ago. So I just want you to be aware that that, and that consumed almost the entire oral argument. So just so you are aware, there's another panel that is very likely writing on this question. So another panel may come to a decision on this question before you have the opportunity to do it. But to address the substance of it, this Court in Janus, in the year before the Supreme Court decided Basic, in Solomon Analysts afterwards, said that the burden of proof is on the defendant and that it is by preponderance, which is the standard burden of proof. And the reason for that is that it's a presumption that appears out of the air. That it's a presumption that has to be established by evidence. And so what the plaintiffs have to do here is we have to establish the existence of an efficient market. As my friend says, then we're going to have to plead that there is a material misrepresentation and that it's publicly disclosed. And what the Supreme Court said is in interpreting how it is that we're going to read 10b-5 and be able to have a workable system and if we could explode that, if we could pop that bubble just by producing some evidence, say if there were 10 analysts who said that there was a price impact and one who said there wasn't, then it would be an entirely worthless presumption. It wouldn't actually make securities class actions amenable to class treatment. And so every Court that has considered this, except conceivably in the unusual circumstances of the Eighth Circuit's Best Buy decision, but Basic was decided a long time ago and it has a see-also citation to the advisory committee notes to Rule 301. And in the entire succeeding time after that, no Court has applied anything other than the preponderant standard has put the burden on the defendant. Congress has amended the securities laws. Rule 23 has been amended and there's been no indication that that is the incorrect legal standard. It's because it would be too easy. I agree with you that Solomon says the burden is certainly placed upon the defendants to show no price incentive. Right? But I didn't see reasonable doubt. Well, it says. Of the evidence. I didn't see that as a standard laid out by the circuit. Yeah. In Solomon, and I apologize, there's a case that's cited in Solomon. It says the burden of proof. And so it is more than the Rule 301 burden of production. There is an actual burden of proof that's applied. I agree that the word preponderance, that is to say it's not, the Court has not said preponderance versus beyond a reasonable doubt but it has been understood by every court, the Southern District, all of the cases that have applied those decisions, that when the Court has said the burden of proof, it means the ordinary burden of proof. And it certainly isn't merely the burden of production which would, we think, just too easily explode the basic presumption. So we have, I think, the legal standard but the Court has still asked, okay, assuming that the correct legal standard is as Judge Crotty at least said in the footnote and we believe was applying, that it's on the burden to, you know, to prove by a preponderance the evidence that there wasn't a price impact, what do we make of the evidence in this case? So my friend's view is that they, that we were just speculating and I think this is just a misunderstanding of the record and certainly a misarticulation of the record that was before Judge Crotty. In particular, we have a rebuttal report from our expert Finity. It's at JA 5439 and he does do, and it's 71 pages long and he does do an extensive analysis of their arguments with respect to what happened to the price of the stock on, for example, these 34 other occasions and the argument of their experts, Troy and Gompers, that this is just a reaction to the prospect that there's going to be an SEC investigation. So the other side's theory on this point is, look, they have an expert who looked at other disclosures of investigations of charges by the Department of Justice and the stock goes down and therefore you can't attribute a stock decline to fraud as opposed to the market simply realizing, gosh, this company's in trouble, it's going to be a very expensive investigation and the like, and he makes several important points. The first is that evidence doesn't disaggregate cases where the investigation is itself tied to the fraud. It, of course, makes perfect sense that the market would react as we're describing it and that is, and we can talk about the specific instances of alleged puffery whether they're concrete or not, but just assuming for the moment that the court is not getting to the question of materiality. When the market is told we have concrete policies that will avoid conflicts of interest when the abacus CDO is described and other CDOs are described as being in the interest of the purchasers rather than, say, Paulson or Goldman itself, and then the market finds out through an investigation that that's not true and there's going to be a conflict of interest and that's a fraud. It's not a mere reaction to the existence of the... Why is it? A misrepresentation need not necessarily be illegal. Yes. A conflict of interest need not necessarily be illegal, would it? Well, it depends on if there's a conflict of interest  The misrepresentations were not. You don't assert that Goldman said we have a very strong series of regulations and therefore we won't be subject to trying to preserve the company's assets and stockholder's equity from fines and other investigative costs associated with SEC investigations. That's not the statement they made. They just said we don't have conflicts of interest. Right? No. Because suits could be brought by clients. Clients could bring lawsuits claiming conflicts of interest. People who invested in abacus could say conflict of interest. Okay? And you would say then that when those lawsuits were announced and the market reacted to that that was an indication of fraud on the market? Well, it would be a corrective disclosure. Right. But isn't that different from the representation that they may have had conflicts of interest identified by the New York Times, the Financial Times, a whole slew of others that say Goldman had these conflicts. I mean, those are indicative of that the original statements were false, right? Okay. That would be a truth on the market. Right. Why is it truth on the market? Because what that would be saying is that the market already knew that there were these conflicts of interest. Right. So if I'm thinking about buying Goldman stock and I read in the New York Times Goldman was dealing with this guy Paulson who was dealing with Abacus and they knew that Paulson was shorting the very collateralized debt obligations that he was marketing and then they turned around and sold them to clients of Goldman. And I might think that's reprehensible for Goldman to do it but as long as I don't know it's illegal I'm going to go ahead I might go ahead and buy the stock, right? Yes, sir. I'm trying to distinguish two things. The first is the legal question whether truth on the market which is an argument about materiality is before the court and then I want to deal with the substance. I'm not interested in materiality. Well, my point is that what you are describing, Your Honor, is a materiality argument. If you are saying that the market already knew about Abacus and therefore it would not have read the more generalized statements what they characterize as the more generalized statements as any sort of promise of an absence of conflicts when it comes to Abacus that is a materiality argument. Judge Crotty seemed to fault the fact that they couldn't separate out when the SEC investigations were announced that they couldn't separate out how much of the fall in the market was related to the announcement of the investigation as opposed to the untruthfulness of the 10B of the representations with regard to conflicts of interest. Correct? That's correct. I mean that's page 10 of his decision. Okay. Well, maybe I'm just too simple to understand this because it seems to me that if I'd already known that there were conflicts of interest and it didn't affect the market then the only thing I could conclude is that when finally the SEC decides to slap the cuffs on them that when the market falls it's because the SEC is after them now. Well, Your Honor, if you'd accept the premise of the defendants that the market was aware of the conflict of interest Right. Right, then you're going to come out in a different place than Judge Crotty. My point is that Judge Crotty looked at the evidence including the competing expert reports and concluded otherwise. What Judge Crotty said as was described by the judge is that if you look at these 34 alleged statements Right. across the board you have repeated denials by Goldman and the kinds of things that appeared in the newspapers were very different in kind from anything like this kind of disclosure that occurred when the investigations were revealed. The other thing that I think is very important in understanding how the defendants are mischaracterizing the nature of our I don't mean to interrupt you but I'm trying to just understand what you're saying. So you're saying that the nature of what was revealed earlier is so different from what was the kind of the underpinning of the SEC investigation that those themselves were materially different and that's what Crotty said? Yes. Absolutely. Judge Crotty says look you look at these newspaper articles and the like and they don't have anything like the level of detail  corrective disclosure and in addition they are filled with denials by Goldman that it's even true. The thing that I think is really important to understand is that it is not merely one about commission. It is not merely one about misrepresentations and that is I think how the defendants misunderstand this as they hope to recharacterize this as a case about puffery and therefore all of the more concrete revelations what they characterize in these 34 alleged you know disclosures to the market they say are much more on point. Our case is about both misrepresentations that is to say we have concrete conflicts policies combined with the other and we have an omission to acknowledge and to tell the market about the conflicts when it comes to abacus and the like. Goldman consistently was representing that these CDOs were in the interest of the purchasers rather than the interest of itself or in the interest of abacus and all I can tell you is that when we are talking about whether this case should proceed as a class action that is do all of the plaintiffs have a common interest what Judge Crotty is in the best possible position to be able to evaluate the record before it the nature of the different statements and the nature of the expert reports. There is one other thing that the court should be aware of and that is not only on the question of materiality which included all of the points that we are discussing now did the district judge deny a motion to dismiss and a motion to reconsider but there is pending right now summary judgment on this question. After the motions to dismiss were denied and reconsideration was denied the parties developed a more fulsome record on the issues that we are talking about whether the statements were material what the effect of the market was there were expanded expert reports on them so there was a motion for summary judgment filed by the defendant we filed our response the defendant was poised to file a reply brief when this court granted rule 23F so Judge Crotty has before him a complete record on exactly the issues that we are talking about and my only suggestion is that when we are talking about the question of law before you which is do the plaintiffs have different interests here so these should be a bunch of individual lawsuits or is this a common question across the class this is every question that has been asked every statement by all the lawyers before you has been uniform to the entire class this is why this should go forward as one case and Judge Crotty is about to be able to decide on a fulsome record whether there was price impact whether these statements were material it seems a very strange procedure for us to ask you all to decide that question on 23F I keep reminding myself and the clerk that works on this with me that this is a class certification appeal and not a 54 or 56 motion for summary judgment because it keeps sounding like summary judgment here's my problem Mr. Gouldstein I'll be front up with you Judge Crotty is a careful jurist and I understand he had a footnote but why does he say why does he say defendants attempt to demonstrate a lack of price impact merely Marshall's evidence which suggests a price decline for an alternate reason but does not provide conclusive evidence that no link exists between price decline and the misrepresentation I agree I mean am I supposed to overlook that no because this creeps into the information sphere that we live in and so someone on a keyword search ends up seeing this and this now stands for the proposition of what the burden the standard proof is why not send it back and say that that that Jeff is wrong on 301 if he is wrong on 301 I'm fine since I'm I'm sure you would agree that you think he's wrong on 301 I don't think he would agree the but but that it ought to be clear that this is a preponderance of evidence question because because it's it's it's it's not it's it's not that there's no conclusion but one it's that the evidence outweighs the other I agree with everything credible evidence outweighs the other so I take the point look this is what we have to do in you you all confront this question a lot in looking at district judges opinions okay and so we see words here or there it's like when the Supreme Court when we're arguing up there look and see individual words in your opinions you have to take the body of the opinion as a whole here's what I can tell you Judge Prady not only says that the standard is preponderance but cites a series of cases saying that the standard is preponderance why he does your honor but then on conclusive I'm coming not when he has to your honor it depends on what we mean by when he has to I'm I'm coming to the word conclusive okay I I completely take the point I I agree in courts words mean things your honor you have to give if we're gonna not in the in the political world but words mean things here the one thing that we have left our coin our coin the way we communicate with you the way you communicate with us the way you the way you advise your clients is language and we and you are wordsmiths both of you and your firms are wordsmiths of the highest order you know which makes this case enjoyable although problematic but but you I don't know how you overlooked that I'm not suggesting that you overlook it what has we have to take the bitter with the sweet if you're gonna tell me that the word conclusively appears we're gonna have to give us credit for the fact that there is an express statement of the standard of proof and citations to multiple cases I agree that perhaps the word conclusive is an artful but in context it's very clear what he means and that is simply that we have the argument by the other side that they have negated price impact that is conclusively proved that there is no price impact and all he is saying there is that and you will see this from the Finnerty rebuttal report from the last 25 pages of it and that is what they have done is proved conceivably that some amount of the price impact was attributable to the existence of the investigation but not all of it there is not I can I don't think it's fair to read into a single word in his opinion a single word that he is trying to say because to say conclusively you would have to say he is applying a standard above the criminal law beyond a reasonable doubt and when you have a district judge  expressly says it is a preponderance standard when every court thus far has applied a preponderance standard where every case he is citing applies a preponderance standard if you are concerned about how the case will be interpreted what I would suggest doing is that the court can say in an opinion we see this word conclusively in context given that he said it's a preponderance standard and you are well aware that this case is going to summary judgment right now and you understand the court is applying a preponderance standard it would require an inordinate amount of effort to rerun this entire exercise to say what we already know he has said this    standard and you are well    court can say in an opinion given that he said it's a preponderance standard and you understand the court is applying an     to        know he has said it's a preponderance standard and you understand the court can say in an opinion given that he has said that he has said it is      say in an opinion given that   it is a preponderance standard and has said it is a preponderance